No. 23-1711

# United States Court of Appeals for the Federal Circuit

ESIGNATURE SOFTWARE, LLC

*Plaintiff-Appellant,*

v.

ADOBE INC.

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of California in Case No. 3:22-cv-05962-JSC,
Judge Jacqueline Scott Corley.

## BRIEF OF APPELLEE ADOBE INC.

NICHOLAS H. LEE
nicholas.lee@arnoldporter.com
ARNOLD & PORTER KAYE
SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, California 90017
Telephone:      (213) 243-4000
Facsimile:      (213) 243-4199

MICHAEL A. BERTA
michael.berta@arnoldporter.com
THOMAS T, CARMACK
Tom.carmack@arnoldporter.com
ARNOLD & PORTER KAYE
SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, California 94111
Telephone:      (415) 471-3100
Facsimile:      (415) 471-3400

August 21, 2023

*Counsel for Appellee Adobe Inc.*

## EXEMPLARY PATENT CLAIMS AT ISSUE

1. A method for embedding a written signature into a secure electronic document, comprising:

forming a placeholder electronic document containing content to be attested to by a signature;

selecting a signing individual from a signer list;

placing a signature tag into the placeholder electronic document at a selected signature location, wherein the signature tag is associated with the signing individual and defines the signature location within the placeholder electronic document for the signing individual to sign;

securing the placeholder electronic document to form the secure electronic document having content configured to be uneditable;

sizing an unsigned signature bounding box on a signature capture device based on a type of the signature tag at the signature location, wherein the signature bounding box is displayed independently of a display of the secure electronic document; and

capturing a signature with the signature capture device within the signature bounding box as the signature is written by the signing individual, the signature capture device being configured to enable the signing individual to write the signature to be embedded into the secure electronic document at the signature location indicated by the signature tag to mimic a real world experience of signing paper documents.

12. A system for embedding a written signature into a secure electronic document, comprising:

an editing module configured to edit content in a placeholder electronic document, wherein the content is to be attested to by a signature;

a signer list module comprising a list of selectable signing individuals;

a tagging module for adding at least one signature tag associated with the selected signing individual to the placeholder electronic document, wherein each of the at least one signature tag defines a location for a signature within the electronic document and indicates the signing individual associated with the signature tag to sign at the location;

a secure document creation module for securing the content in the placeholder electronic document to form a secure electronic document containing content configured to be uneditable;

a secure document signer module to enable the secure electronic document to be viewed and to accept written signatures from the signing individuals at the signature tag location;

a signature capture device configured to enable the signing individual to write a signature at a transaction time for each of the at least one signature tag associated with the signing individual and further configured to size an unsigned signature bounding box based on a type of the signature tag at the location, wherein the signature bounding box is displayed independently of a display of the secure electronic document; and

a signature capture module configured to electronically embed the signature of the signing individual from bounds of the the (sic) signature bounding box on the signature capture device into the secure electronic document at a location of each of the at least one signature tag associated with the signing individual.

No. 23-1711

# United States Court of Appeals
# for the Federal Circuit

ESIGNATURE SOFTWARE, LLC
*Plaintiff-Appellant,*

v.

ADOBE INC.,
*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of California in Case No. 3:22-cv-05962-JSC,
Judge Jacqueline Scott Corley.

## CERTIFICATE OF INTEREST

Counsel for Appellee Adobe Inc. certify the following:

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Adobe Inc. | | |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

| | | |
|---|---|---|
| Ryan J. Casamiquela (Arnold & Porter Kaye Scholer LLP) | Mark D. Siegmund (Steckler Wayne Cherry & Love, PLLC) | |
| Neda Dadpey (Arnold & Porter Kay Scholer LLP) | Gregory P. Love (Steckler Wayne Cherry & Love, PLLC) | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑      None/Not Applicable

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑      None/Not Applicable

DATED: August 21, 2023          */s/ Michael A. Berta*
                               Michael A. Berta

# TABLE OF CONTENTS

**Page**

ABBREVIATIONS ...................................................................................1

COUNTER-STATEMENT OF RELATED CASES.................................2

COUNTER-STATEMENT OF THE ISSUES ........................................2

COUNTER-STATEMENT OF THE CASE ...........................................2

I.    THE '527 PATENT AND ITS CLAIMS ......................................2

    A.    Claims 1 and 12 Are Representative of All '527 claims......................3

    B.    The Claims Are Directed to a Long-Standing Real-World Business Practice .................................................................3

    C.    The Claims and Specification Recite Only Generic Computer Components.............................................................5

II.    THE DISTRICT COURT PROCEEDINGS .................................9

SUMMARY OF ARGUMENT ............................................................11

ARGUMENT ......................................................................................15

I.    STANDARD OF REVIEW.........................................................15

II.    THE DISTRICT COURT CORRECTLY HELD THAT THE '527 PATENT CLAIMS ARE INVALID UNDER SECTION 101 ....................15

    A.    The '527 Patent Claims are Directed to an Abstract Idea..................16

        1.    The '527 patent claims are directed to a long-standing real-world business practice ......................................16

        2.    The '527 patent claims represent the classic "do it on a computer flaw"................................................21

    B.    The '527 Patent Claims Recite No Inventive Concept .....................24

i

1.    Independent claims 1 and 12 of the '527 patent should be treated as representative of all claims under Alice step two ...................................................25

2.    Independent claims 1 and 12 lack an inventive concept, reciting only generic computer components to implement the abstract idea.............................27

3.    The dependent claims lack an inventive concept ....................31

C.    No Unresolved Issues of Facts Preclude Affirming Judgment.............................................................................33

D.    The District Court Did Not Need to Engage in Claim Construction........................................................................37

CONCLUSION ........................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ........................................................... 34

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ........................................................... 18

*Adaptive Streaming Inc. v. Netflix, Inc.*,
  836 F. App'x 900 (Fed. Cir. 2020) ...................................................... 33

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ...................................................... 27, 29

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................................... *passim*

*Berkheimer v. HP*,
  881 F.3d 1360 (Fed. Cir. 2018) ........................................................... 33

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ...................................................... 32, 36

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ...................................................... 37, 38

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ...................................................... 27, 37

*Elec. Commc'n Techs., LLC v. Shopperschoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) .................................................. 12, 20, 34

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ...................................................... 23, 24

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
  132 F.3d 526 (9th Cir. 1997) .............................................................. 15

*Guidry v. Am. Public Life Ins. Co.*,
  512 F.3d 177 (Fed. Cir. 2007) ............................................................ 34

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) .......................................22, 24, 28, 32, 35

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ...........................................................30

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ................................12, 20, 21, 24, 27

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ...........................................................15

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ....................................25, 26, 27, 36, 38

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017) ...........................................................15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) .............................................22, 30, 40

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019) ......................................21, 22, 32, 34

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021) .......................................................35, 37

## **Statutes**

35 U.S.C. § 101 ...............................................................................*passim*

## **Other Authorities**

Fed. R. Civ. P. 12(c).........................................................................9, 15

## ABBREVIATIONS

| | |
|---|---|
| '527 patent | U.S. Patent No. 8,065,527 |
| Appx___ | Page in Appendix |
| Appx___, x:yy-zz | Page in Appendix citing '527 patent at column x, lines yy-zz |
| Appx___, a:bb-cc | Page in Appendix citing transcript at page a, lines bb-cc |
| Appellant | Plaintiff-Appellant Esignature Software, LLC |
| AppellantBr., ___ | Opening Brief of Appellant Esignature, filed June 28, 2023 |
| District Court | United States District Court for the Norther District of California in the case appealed from |
| Adobe | Defendant-Appellee Adobe Inc. |

## COUNTER-STATEMENT OF RELATED CASES

There has been no other appeal in or from the same civil action in this or any other appellate court. Other than the District Court case from which this appeal is taken, there are no other pending district court actions.

## COUNTER-STATEMENT OF THE ISSUES

Whether the District Court correctly held that the claims of the '527 patent are patent-ineligible under 35 U.S.C. § 101 because they (i) are directed to an abstract idea, and (ii) do not contain an inventive concept.

## COUNTER-STATEMENT OF THE CASE

## I.     THE '527 PATENT AND ITS CLAIMS

There is no dispute that in today's digital age, patent eligibility cannot arise from implementing an abstract idea itself using generic computer components. *See Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 573 U.S. 208 (2014). Indeed, merely moving the implementation of such an idea to the digital space in order to achieve efficiency or optimization gains inherent in the utilization of computers does not escape patent ineligibility. *Id.* at 224 (claiming the use of a computer to perform an otherwise abstract idea does not render such claims patentable). Here, the '527 patent runs afoul of this principle and is patent ineligible. The claims, specification, and admissions by Appellant establish that: (i) the '527 patent is directed to the long-standing, real-world business practice of placing a person's

2

signature in a designated place within a document and then moving it to the digital realm; and (ii) the claims and specification only recite generic computer components to implement that long-standing business practice electronically.

### A. Claims 1 and 12 Are Representative of All '527 claims

The '527 patent contains twenty-six claims, including independent claims 1 and 12. Appx35–37. At the District Court, Appellant asserted claims 1, 2, 9, 11, 12, 20, and 22 against Adobe, but agreed that claims 1 and 12 are representative of all the claims of the '527 patent for purposes of the Section 101 analysis. Appx116, 2:21–23 (The Court: "for the purposes of the motion, you agree that [claims 1 and 12] are representative?" ESignature: "Yes."); *see also* Appx83, 2:3 ("Claim 1 is representative"). In addition, Appellant proffers no argument regarding how or why any claimed features other than those in claims 1 and 12 would provide distinctive significance for the Section 101 analysis.

### B. The Claims Are Directed to a Long-Standing Real-World Business Practice

The claims are expressly directed to emulating the long-standing real-world business practice of signing a document at a designated place, and moving it to the digital space using generic computer components. For example, Claim 1 recites a method of embedding a signature in a document by forming a placeholder document, selecting a signer, placing a signature tag in the placeholder document,

sizing a signature box, and capturing a signature.  Appx35–36, 10:45–11:3.[1]  Claim

1 is reproduced below, with the steps of the long-standing practice of signing a

document in bold, and the claimed generic computer components underlined:

> 1. A method for **embedding a written signature into a secure electronic document**, comprising:
>
> **forming a placeholder electronic document** containing content to be attested to by a signature;
>
> **selecting a signing individual** from <u>a signer list</u>;
>
> **placing** <u>**a signature tag** into the placeholder electronic document</u> at a selected signature location, wherein the signature tag is associated with the signing individual and defines the signature location within the placeholder electronic document for the signing individual to sign;
>
> **securing the placeholder electronic document** to form the <u>secure electronic document</u> having content configured to be uneditable;
>
> **sizing an unsigned** <u>**signature bounding box** on a signature capture device</u> based on a type of the signature tag at the signature location, wherein the signature bounding box is displayed independently of a display of the secure electronic document; and
>
> **capturing a signature** with the <u>signature capture device</u> within the signature bounding box as the signature is written by the signing individual, the signature capture device being configured to enable the signing individual to write the signature to be embedded into the secure electronic document at the signature location indicated by the signature tag **to mimic a real world experience of signing paper documents**.

---

[1] Claim 12, the system analog to the method recited in Claim 1, recites a system for embedding a signature in a document.  Appx36, 11:46–12:14.

Appx35–36, 10:45–11:3.  To avoid any doubt that the claim language is directed to the age-old practice of signing documents, Claim 1 itself recites that the claimed invention "mimic[s] a real world experience of signing paper documents." Appx36, 11:2–3.

The '527 specification further confirms that the alleged invention is directed to the long-standing business practice of signing documents.  The specification recognizes that "signatures have been used for centuries to notarize and authenticate documents."  Appx31, 1:7–8.  Moreover, it confirms that the alleged inventive process is directed to that business practice: "Parties to a signatory document have historically relied on the visual information provided by a simple signature … *the process disclosed preserves centuries of legal and business precedent*."  Appx35, 10:28–35 (emphasis added).

**C.    The Claims and Specification Recite Only Generic Computer Components**

As the claim language shows above, Claim 1 recites only generic computer structures, namely a "placeholder electronic document," a "signer list;" a "signature tag," a "secure electronic document," a "signature bounding box," and a "signature capture device."  Appx35–36, 10:45–11:3.  The claim does not recite any specific device, any specialized programming, or any specific improvement in computer functionality to implement the claimed functionality.  *Id.*

Claim 12 likewise recites a number of generic computer "modules,"
described in purely functional terms.  Appx36, 11:46–12:14.  Claim 12 is
reproduced below, with the generic computer modules/devices in bold and the
functions they are designed to perform underlined:

> 12. A system for embedding a written signature into a secure electronic
> document, comprising:
>
> **an editing module** <u>configured to edit content</u> in a placeholder electronic
> document, wherein the content is to be attested to by a signature;
>
> **a signer list module** comprising a list of selectable signing individuals;
>
> **a tagging module** <u>for adding at least one signature tag</u> associated with the
> selected signing individual to the placeholder electronic document, wherein
> each of the at least one signature tag defines a location for a signature within
> the electronic document and indicates the signing individual associated with
> the signature tag to sign at the location;
>
> **a secure document creation module** <u>for securing the content</u> in the
> placeholder electronic document to form a secure electronic document
> containing content configured to be uneditable;
>
> **a secure document signer module** <u>to enable the secure electronic document
> to be viewed and to accept written signatures</u> from the signing individuals at
> the signature tag location;
>
> **a signature capture device** <u>configured to enable the signing individual to
> write a signature</u> at a transaction time for each of the at least one signature
> tag associated with the signing individual and further configured to size an
> unsigned signature bounding box based on a type of the signature tag at the
> location, wherein the signature bounding box is displayed independently of a
> display of the secure electronic document; and
>
> **a signature capture module** <u>configured to electronically embed the
> signature</u> of the signing individual from bounds of the signature bounding
> box on the signature capture device into the secure electronic document at a

6

location of each of the at least one signature tag associated with the signing individual.

Appx36, 11:46–12:14.

For each of Claim 12's "modules," no programming or specific structure is provided in the claim. *Id*. For example, for the "signer list module," claim 12 only requires that the module generally comprises a "list of selectable signing individuals." Appx36, 12:51–52. For the other limitations, the modules and devices only work with other generic computer components, such as "placeholder electronic document," a "signature tag," a "secure electronic document," a "signature bounding box," and a "signature capture device" to facilitate the recited functionality aimed at signing a document in a designated place. Appx36, 11:46–12:14.

The specification also confirms that the '527 patent does not require any special programming or unconventional structures for the claimed modules or devices. For instance, for the claimed "editing module," the specification confirms that it can be any well-known commercially available software, "such as Microsoft Word, WordPerfect, OpenOffice, Google Docs, and the like." Appx32, 3:8–17. For the "signer list module," no specific structure is disclosed at all. Rather, it is simply described as a module that "can be included or coupled to the editing module." Appx32, 3:18–19. For the "tagging module," the specification does not disclose any particular programming or hardware for its claimed function of adding

7

signature tags to an electronic document.  Appx32, 4:7–18.  For the "secure document creation module," the specification likewise does not disclose any programming for the claimed functions of securing an electronic document for viewing and accepting written signatures.  Appx32, 4:50–59.  For "secure document signer module," no structure is disclosed; it is simply described as an interface having a similar appearance to the editing module (Appx33, 5:14–17), where "a wide variety of different types of user interfaces are possible" (Appx34, 7:8–11).  For the "signature capture device," the specification explains that it can be "any type of electronic signature capture device capable of communicating with a computer."  Appx33, 6:27–29.  And for the "signature capture module," the specification fails to disclose any programming or specialized hardware for the claimed function of embedding a signature.  Appx33, 5:27–36.

Consistent with the disclosures of the '527 patent, Appellant admits that none of the claim terms have a special meaning.  To that end, Appellant has not proposed a claim construction, either at the District Court or on appeal, let alone proffer a specific construction for any of the claim terms in the '527 patent that would impact the Section 101 analysis.  In fact, at the District Court, Appellant confirmed that it "does not have any proposed terms to construe and is going with 'no construction needed, plain and ordinary meaning' for any terms that Adobe may designate."  Appx132.

8

## II.     THE DISTRICT COURT PROCEEDINGS

Following transfer of the case from the Western District of Texas to the Northern District of California, Adobe moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) that the '527 patent claims are invalid under 35 U.S.C. § 101.  Appx54–76.  Appellant opposed the motion and Adobe filed a reply.  Appx77–96; Appx97–114.  The District Court held a hearing on January 19, 2023, and thereafter, granted Adobe's motion and entered judgment in Adobe's favor, finding the '527 patent ineligible under 35 U.S.C. § 101.  Appx1; Appx2–11; Appx115–131.

The District Court analyzed claims 1 and 12 of the '527 patent as the "representative claims," in light of the parties' agreement to treat these claims as such.  Appx116, 2:15–23; Appx5, 4:19–22.

Under step one of the *Alice* framework, the District Court found that the '527 patent claims are directed to an abstract idea.  Appx5–9, 4:13–8:20.  First, the District Court determined the focus of the claimed advance over the prior art to be "a system or method to apply a signature digitally, in a designated place, within a secure electronic document."  Appx6, 5:15–16.  Appellant agrees with this finding, stating in its appeal brief that the "District Court correctly determined this focus" of the claims.  AppellantBr., 11.  Next, the District Court held that this claimed focus is an abstract idea because the claim language recites an existing business

9

practice of applying a signature to a location in a document and simply moves that practice to the digital realm using generic computer technology. Appx7, 6:15-22 (citing the '527 patent specification, which recognizes signatures as a long-standing business practice). The District Court also applied the "brick-and-mortar test and the "pen and paper" test, determining that the '527 "patent takes an age-old commercial practice—allowing persons to sign documents in specific places—and applies it to the electronic context." Appx7–8, 6:23–7:2. The District Court found that the '527 patent claims suffers from a "do it *on* a computer flaw," whereas patent-eligible claims improve functionality *of* a computer. Appx8–9, 7:15–8:5.

Under step two of the *Alice* framework, the District Court held that the '527 patent claims lack an inventive concept. Appx9–11, 8:21–10:15. Specifically, the District Court found that the '527 patent claims do not recite any specific improvement to computer capability and instead simply recite generic computer features to implement the underlying abstract idea. Appx9–10, 8:26–9:6. Accordingly, the District Court held the claims fail to transform the patent-ineligible abstract idea into a patent-eligible invention. *Id*.

The District Court also found that the '527 patent claims purport "to preempt all forms of digital signature capture." Appx11, 10:11–12. The District Court reasoned that the claims lack any meaningful limitations relating to *how* to capture

10

signatures electronically.  Appx11, 10:3–7.  In response to Appellant's assertion that the "['527] patent does not limit itself to a specific type of [signature capture] device because 'technology changes over time,'" (Appx11, 10:8–9 (quoting Appx128, 7:5–11)), the District Court cautioned that this "is exactly the type of abstract idea preemption the Supreme Court warned about in *Alice*" (Appx11, 10:10–11).

The District Court found no factual disputes that would preclude judgment on the pleadings.  Appx10, 9:7–18.  The District Court assumed, as a factual matter, Appellant's assertion that the claimed invention addressed an unsolved problem by using digital signatures.  Appx10, 9:7–12.  The Court reasoned, however, that satisfying the requirement for novelty does not imply eligibility under Section 101 because what may be novel may still be abstract.  Appx10, 9:10–18.  The Court then found that the '527 patent claims still fail *Alice* step two because the claims simply apply an abstract idea on a generic computer.  Appx10, 9:15–18.

## SUMMARY OF ARGUMENT

The claims of the '527 patent are directed to the long-standing practice of signing a document.  And the claims use generic computer components to implement that long-standing practice electronically.  Where, as here, claims are directed to a long-standing, real-world practice using generic computer

11

components, this Court and the Supreme Court have repeatedly found them to be ineligible under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 219-20 (2014) (ineligible claims directed to "intermediated settlement," which is a "fundamental economic practice"); *Elec. Commc'n Techs., LLC v. Shopperschoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020) (ineligible claims directed to long-standing practice of providing customers notice of pickup or delivery status); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (ineligible claims directed to long-standing practice of screening messages similar to a post office).

As a threshold matter, to decide the patent eligibility issue of the '527 patent, Appellant has already agreed to treat independent claims 1 and 12 as representative of all claims. Appx116, 2:14–23. In fact, Appellant never advances an argument on appeal showing other claims as having a patentable feature distinct from the features recited in those representative claims. Accordingly, the District Court analyzed claims 1 and 12 of the '527 patent under the *Alice* two-part test, and this Court can do the same.

Under *Alice* step one, the claims of the '527 patent are directed to a patent-ineligible abstract idea, namely the long-standing, real-world business practice of signing a document at a designated place, but implemented in the digital space using generic computer technology. The intrinsic record confirms this. Indeed, the

12

claim language itself recites a method to "mimic a real world experience of signing paper documents." Appx36, 11:2–3. And consistent with that language, the specification acknowledges that "signatures have been used for centuries" and that "the process disclosed preserves centuries of legal and business precedent." Appx31, 1:7–8; Appx35, 10:28–35.

Under *Alice* step two, the claims do not recite an inventive concept sufficient to confer patentability to the abstract idea. The claims and specification only describe generic computer components along with functional, results-driven language. And neither recite any specialized programming, device, or implementation techniques. For example, the "signature-capture device" is claimed in purely functional terms. Appx35–36, 10:65–11:1 ("signature capture device configured to enable the signing individual to write the signature to be embedded into the secure electronic document"). And the specification discloses that the signature capture device "can be any type of electronic signature capture device capable of communicating with a computer." Appx33, 6:27–31. Indeed, Appellant admitted to the District Court, as it must, that "there's no – a specified device within the patent itself" for the claimed "signature capture device." Appx121, 7:5–11. As such, for implementing the claimed invention of capturing and placing a signature into an electronic document, there is no dispute that the '527 patent only discloses the use of generic computer components that are merely

13

designed to implement the functional step as claimed.  And under this Court's precedent, such disclosures cannot constitute an inventive concept to confer patentability.

No issues of fact would preclude judgment on the pleadings, let alone a finding that the '527 patent is ineligible under 35 U.S.C. § 101.  Appellant has not identified any claim limitations that, individually or collectively, create unresolved factual issues to preclude such a finding.  Furthermore, any argument by Appellant over the need to have claim construction to resolve whether or not the '527 patent is patentable under Section 101 is misplaced.  At the District Court, Appellant never asserted claim construction was necessary, and in fact, affirmatively proposed "no construction needed, plain and ordinary meaning" for all claim terms in the '527 patent.  Appx132.  To be sure, Appellant never even proffers disputed or proposed constructions on appeal.  Thus, on this record, Appellant cannot salvage its patent under the guise of claim construction or some other fact issue, as none of it would materially affect the Section 101 analysis.

Accordingly, Adobe requests that this Court affirm the District Court's judgment on the pleadings and hold each of the claims of the '527 patent ineligible under 35 U.S.C. § 101.

# ARGUMENT

## I.    STANDARD OF REVIEW

This Court applies the law of the regional circuit to review a district court's

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil

Procedure. *Smart Sys. Innovations, LLC v. Chicago Transit Auth*., 873 F.3d 1364,

1367 (Fed. Cir. 2017).  Under Ninth Circuit law, this Court reviews *de novo* a

district court's ruling under Rule 12(c).  *Enron Oil Trading & Transp. Co. v.

Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997).  Patent eligibility under 35

U.S.C. § 101 is a question of law that this Court also reviews *de novo*.  *OIP Techs.,

Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).

## II.    THE DISTRICT COURT CORRECTLY HELD THAT THE '527 PATENT CLAIMS ARE INVALID UNDER SECTION 101

The District Court properly applied the *Alice* two-part test.  Under this test,

the first step is determining whether the claims are directed to a patent-ineligible

concept. *Alice*, 573 U.S. at 217.  If so, the next step is to "search for an inventive

concept" by considering the claim limitations individually and as an ordered

combination to determine whether they "transform the nature of the claim" from an

abstract idea into a patent-eligible application. *Id.*  After applying this test, the

District Court correctly held the '527 patent claims invalid under 35 U.S.C. § 101.

## A.    The '527 Patent Claims are Directed to an Abstract Idea

Under *Alice* step one, the claims of the '527 patent are directed to the abstract idea of signing a document at a designated place.  Appellant acknowledges that the District Court correctly determined the claimed focus of the invention, namely "a system or method to apply a signature digitally, in a designated place, within a secure electronic document." *Id*. (citing Appx6).[2]  Applying the District Court's focus under *Alice* step one, the claimed invention represents an "abstract idea" because it is directed to (i) a long-standing practice of signing documents, (ii) where only generic computer components are utilized to implement the long-standing practice in an electronic context.  The District Court's application of the abstract idea inquiry in this regard was sound and correct.

### 1.    *The '527 patent claims are directed to a long-standing real-world business practice*

There is no dispute that the focus of the '527 patent claims is applying a person's signature in the designated place within a digital document.  Indeed, the '527 claims are expressly directed to "embedding a written signature into a secure electronic document" and, in the case of claim 1, expressly recites that its purpose is "to mimic a real world experience of signing paper documents." Appx35, 10:45-46, Appx36, 11:2–3, 11:46-47.  As illustrated in the table below, the '527 patent

---

[2] Appellant instead argues that "the District Court's application of the abstract idea inquiry was in error."  AppellantBr., 11.

takes the long-standing, real-world business practice of applying a person's written

signature to a document and simply digitizes it in a generic computer environment.

| Claim 1 (Appx35-36) | Long-Standing Real-World Practice |
|---|---|
| forming a placeholder electronic document containing content to be attested to by a signature; | Provide a document with blank spaces for a person to sign. |
| selecting a signing individual from a signer list; | Decide who should sign the document. |
| placing a signature tag into the placeholder electronic document at a selected signature location, wherein the signature tag is associated with the signing individual and defines the signature location within the placeholder electronic document for the signing individual to sign; | Provide an indication of where a specific person is to sign the document, e.g., through use of bookmarks, paper clips, highlights, or sticky tags. |
| securing the placeholder electronic document to form the secure electronic document having content configured to be uneditable; | Indication that the document to be signed is final and ready to be signed. |
| sizing an unsigned signature bounding box on a signature capture device based on a type of the signature tag at the signature location, wherein the signature bounding box is displayed independently of a display of the secure electronic document; and | Ensure that the proverbial "dotted line" on which a person signs is sized appropriately, e.g., shorter to accommodate initials or shorter names and longer to accommodate full signatures. |
| capturing a signature with the signature capture device within the signature bounding box as the signature is written by the signing individual, the signature capture device being | Allow ink to flow from pen onto paper so as to obtain the real-world signature as a person signs. |

| | |
|---|---|
| configured to enable the signing individual to write the signature to be embedded into the secure electronic document at the signature location indicated by the signature tag to mimic a real world experience of signing paper documents. | |

Independent claim 12, a system claim, is no less abstract than method claim 1 because "the system claim and method claim contain only minor differences in terminology but require performance of the same basic process" meaning "they should rise or fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013). Beyond the same basic limitations of claim 1 set forth in the table above, claim 12 merely adds "purely functional and generic" computer components (e.g., "editing module," "signer list module," "tagging module," "secure document creation module, "secure document signer module," and "signature capture module") to which the patent does not ascribe any particular meaning beyond the functions they are claimed to perform. *Alice*, 573 U.S. at 226; Appx36, 11:46–12:14.

The '527 patent specification also confirms that the claimed invention is directed to the long-standing business practice of signing documents and is merely intended to mirror a person's real-world written signature in the digital space using conventional computer components as tools. The specification recognizes that "signatures have been used for centuries to notarize and authenticate documents"

18

and that the process of signing documents is admittedly a long-standing business practice. Appx31, 1:7–8; *see also id.*, 2:63- 65 (describing the use of written signatures as "an every day part of business and legal work"). It further explains that the alleged innovation of the claims is to create "digital equivalents to the written signature," that can capture the real-world written signature's "unique ability to connect a person's intent and identity with the document upon which their signature is placed." Appx31, 1:22-38; Appx35, 10:28–35 ("Parties to a signatory document have historically relied on the visual information provided by a simple signature ... *the process disclosed preserves centuries of legal and business precedent*") (emphasis added).

Appellant does not dispute that the claims focus is applying a person's signature in the designated place within an electronic document. AppellantBr., 11. Nor does it dispute that signing documents is a long-standing real-world business practice. Rather, Appellant only contends that signing documents in an electronic context is not long-standing, and thus non-abstract. AppellantBr., 12–13. But, claiming an undisputed long-standing business practice by merely applying that practice in an electronic context, and using generic computer components to do so, constitutes an abstract idea. *Alice*, 573 U.S. at 219-220 (claims directed to "intermediated settlement" represent an abstract idea of "'a fundamental economic practice long prevalent in our system of commerce'") (citation omitted). For

19

example, in *Intellectual Ventures I LLC v. Symantec Corp*., this Court found patent claims to be directed to an abstract idea where they recited the long-standing practice of screening messages similar to a post office, but in an electronic context. 838 F.3d 1307, 1318 (Fed. Cir. 2016).  Similarly, in *Elec. Commc'n Techs., LLC v. Shopperschoice.com, LLC*, this Court found that claims reciting generic computer components and directed to the long-standing commercial practice of providing customers notice of pickup or delivery status, represent a patent-ineligible abstract idea.  958 F.3d 1178, 1182–83 (Fed. Cir. 2020) ("Claims, like claim 11, that are directed to longstanding commercial practices do not pass step one of the two-part § 101 test.").  The same is true here.  For instance, in implementing the long-standing business practice of applying a person's handwritten signature in a designated place within a document, the '527 patent confirms that the "signature capture device" of claim 1 "can be any type of electronic signature capture device capable of communicating with a computer."  Appx33, 6:27–31.  Thus, where the '527 patent uses any type of conventional computer to implement a long-standing business practice, that is tantamount to being a patent-ineligible abstract idea.

The "brick-and-mortar test" and the "pen and paper test" also show the claims to be abstract, as the District Court correctly found.  Appx7, 6:23-27.  Appellant argues that the claims are directed not only to using a computer to sign documents, but to applying "a signature digitally, in a designated place, within a

secure electronic document." AppellantBr., 12. But this adds nothing to the analysis. As the District Court properly found "[j]ust as an individual in a the brick-and mortar world might place 'sign here' tabs on a typed contract, the '527 patent describes the same process on a computer." Appx7, 6:23–25 (citing *Symantec*, 838 F.3d at 1317). Appellant does not (and cannot) dispute that placing "sign here" tabs in designated places within a hard-copy document has been done with "pen and paper" for years based on "legal and business precedent." Appx35, 10:32–33. Such "a conventional business practice . . . in the context of electronic communications" represents an abstract idea under *Alice* step one. *Symantec*, 838 F.3d at 1318.

### 2. The '527 patent claims represent the classic "do it on a computer flaw"

Appellant fails to meaningfully distinguish this Court's precedent concerning the "do it on a computer flaw" that the District Court properly relied upon in finding the claims directed to an abstract idea. Appx8–9 (citing *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("This is a quintessential 'do it on a computer' patent: it acknowledges that data from bedside machines was previously collected, analyzed, manipulated and displayed manually, and it simply proposes doing so with a computer. We have held such claims are directed to abstract ideas.")).

In an effort to distinguish *Univ. of Fla. Research Found.*, Appellant argues that prior to the claimed invention, "secure electronic documents were not digitally signed."  AppellantBr., 13.  Aside from improperly conflating novelty with patentability, Appellant's failure to identify any specific component, programming, technique, or other specific claimed improvement in the manner in which computers function in the creation of an electronic signature is fatal to its argument on patentability.  As the District Court, properly found, "if one deletes the word 'electronic' from Claim 1, the method description would be indistinguishable from the process of signing a paper document."  Appx8, 7:21–23.  Rather than recite a specific improvement in computer functionality, the claims recite functional, results-driven language using generic computer components, representing an abstract idea under *Alice* step one.  *See Univ. of Fla.*, 916 F.3d at 1368 (claims do not explain "*how* the drivers do the conversion" and instead employ "functional terms") (emphasis in original); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea"; finding the claim "does not sufficiently describe how to achieve these results"); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (claims directed to an abstract idea because claims

22

not directed to a specific improvement in computer functionality, but directed to a well-known business practice in the context of generic computer components).

To discount the District Court's analysis in this regard, Appellant complains that the District Court over-generalized the claim language by removing or disregarding words. AppellantBr., 13–14. But, this complaint is immaterial, particularly where Appellant readily admits that the District Court properly determined the focus of the claims. *Id.*, 11 ("The District Court correctly determined this focus by looking at the claim as a whole, in that District court analyzed the components of claims 1 and 12."). So too is Appellant's reliance on *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), for the general proposition against overgeneralizing claims. Indeed, *Enfish* is inapposite. There, this Court distinguished between the claims in *Enfish* that are "directed to a specific improvement to computer functionality" and claims, like those at issue here, that merely utilize "conventional computer components to well-known business practices." *See id.* at 1338–39 ("[W]e are not faced with a situation where general-purpose computer components are added post-hoc to a fundamental economic practice."). On the record here, there is no dispute that the claims (i) are directed to the long-standing practice of signing documents (Appx35, 10:32–35 ("the process disclosed preserves centuries of legal and business precedent")); (ii) seek to "mimic a real world experience of signing paper documents," (Appx36,

23

11:2–3) and (iii) only recite generic computer components to apply signatures in an electronic context (Appx35–36,10:45–11:3, 11:46–12:14). This establishes that the '527 patent is directed to an abstract idea under *Alice* step one. *See, e.g.*, *In re TLI Commc'ns*, 823 F.3d at 612; *Symantec*, 838 F.3d at 1318; *Enfish*, 822 F.3d at 1338–39.

### B.     The '527 Patent Claims Recite No Inventive Concept

Under *Alice* step two, no inventive concept exists. The claim language only recites generic computer components along with functional language, while the specification does the same. In an effort to assert an inventive concept in the claims, Appellant identifies, for the first time on this appeal, three alleged features, namely (i) "facilitating remote signatures" in dependent claims 18–19, (ii) "capturing a signature at the time a transaction occurs" in dependent claim 10, and (iii) "saving an embedded signature in a secure electronic document" in independent claims 1 and 12.[3] AppellantBr., 17–18. Appellant, however, offers no analysis showing how these features allegedly transform the claimed abstract idea into a patent-eligible invention. *Id*.

As an initial matter, Appellant waived any argument that dependent claims provide an inventive concept by conceding that independent claims 1 and 12 are

---

[3] This feature of "saving an embedded signature in a secure electronic document" is not recited in independent claims 1 and 12, as discussed below.

representative to decide the patent eligibility of the '527 patent. Appx116, 2:21–23; *see also* Appx83, 2:3. To the extent this Court considers Appellant's argument on the merits, none of the three features, when considered individually or collectively, comprise an inventive concept. Instead, each amount to nothing more than functional, results-driven claim language without any technical implementation detail in the claims themselves or the specification. They all rely on generic computer components to implement the allegedly inventive features, and none of them are directed to improving the manner in which computers operate.

### 1. *Independent claims 1 and 12 of the '527 patent should be treated as representative of all claims under Alice step two*

As an initial matter, the District Court properly treated claims 1 and 12 as representative claims under *Alice* step two because: (1) Appellant agreed to treat them as representative; and (2) Appellant did not advance an argument showing other claims having an inventive feature distinct from the features of claims 1 and 12. "[I]f the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative," a claim may be treated as representative of all claims. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 701, n. 1 (Fed. Cir. 2023) (citation omitted). Both scenarios apply here. First, at the District Court, Appellant agreed to treat independent claims 1 and 12 as

25

representative.  Appx116, 2:16–23 (The Court: "for the purpose of this motion, you agree that [claims 1 and 12] are representative?"  ESignature: "Yes."); *see also* Appx83, 2:5 ("Claim 1 is representative").  Second, Appellant failed to identify any dependent claim limitations that would provide an allegedly inventive concept different from the elements recited in independent claims 1 and 12.  Yet, for the first time on appeal, Appellant identifies new limitations from dependent claims as alleged "improvements over the prior art" sufficient to confer patentability to an otherwise abstract idea that it contends the District Court failed to address.[4] AppellantBr., 17-18.  Appellant, however, never presents any "meaningful argument for the distinctive significance" of these dependent claims from representative claim 1 and 12.  *Sanderling*, 65 F.4th at 701, n. 1; AppellantBr., 17–18.  Nor can it.  As explained in Section II.B.3 below, the identified dependent claims, like the independent claims from which they depend, use generic computer components as tools to merely further the same abstract idea.  As a result, independent claims 1 and 12 of the '527 patent should still be treated as

---

[4] It is unsurprising that Appellant did not present these arguments to the District Court for consideration.  The alleged improvements that Appellant identifies for the first time here are based on dependent claim 10 (for capturing a signature at the time a transaction occurs) and claims 18-19 (for facilitating remote signatures). AppellantBr., 17.  Yet, dependent claims 10, 18 and 19 were not even asserted against Adobe, and in any event, Appellant agreed that independent claims 1 and 12 were representative of all claims of the '527 patent for deciding the Section 101 issue.  Appx83, 2:5; Appx116, 2:16-23.

representative for all claims of the '527 patent in the *Alice* step two analysis. *See Sanderling*, 65 F.4th at 701, n. 1; *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256, n.1 (Fed. Cir. 2016) (treating claim 1 as representative of all claims where patentee failed to present any meaningful argument of the distinctive significance of dependent claims over representative claim 1); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348–49 (Fed. Cir. 2014) (affirming dismissal of dependent claims, where "CET never asserted in its opposition to PNC's motion that the district court should have differentiated any claim from those identified as representative by PNC.").

### 2. *Independent claims 1 and 12 lack an inventive concept, reciting only generic computer components to implement the abstract idea*

As the District Court aptly explained, "the claims [of the '527 patent] "'simply recite[] the use of generic features . . . to implement the underlying idea.'" Appx9, 8:26–27 (citing *DIRECTV*, 838 F.3d at 1262). But that "'simply appending conventional steps specified at a high level of generality' to an abstract idea does not make that idea patentable, *id.* at 1263, as '[g]eneric computer implementation' is insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 223–224." Appx9–10, 8:27–9:2. Tellingly, Appellant never contends that the '527 patent relies on anything more than generic computer components to implement the claimed invention. Nor does

27

it contend that the claimed invention is a technological advancement in the manner in which computers operate.

Appellant instead argues that independent claims 1 and 12 are directed to an inventive concept because they allegedly include a limitation directed to "saving a [sic] an embedded signature in a secure electronic document." AppellantBr., 17–18. This is incorrect for at least two reasons. First, claims 1 and 12 do not claim "saving an embedded signature" as Appellant contends. Appx35–36, 10:45–11:3, 11:46–12:14. The only claim language related to "saving an embedded signature" is found in dependent claim 9,[5] not independent claims 1 and 12. *Id.*, 11:37-39. Second, irrespective of where it is claimed, "saving an embedded signature" cannot provide an inventive concept to confer patentability to an otherwise abstract idea where, as here, it is "described simply in terms of performing generic computer functions, such as storing." *See TLI Commc'ns*, 823 F.3d at 612. Indeed, the specification merely parrots the same general concept as claimed without more. *See* Appx35, 9:9–22 ("The secure electronic document can be saved with one or more embedded signatures. . . . After a first individual on the signer list completes signing the secure electronic document, the document can be saved and sent to the next person or entity on the signer list, and so forth until each person on the signer

---

[5] Claim 9 recites "configuring the secure electronic document such that the embedded signature can be saved in the secure electronic document." Appx36, 11:37–39.

list has completed signing the document."). Thus, neither the claims nor the specification recite any specific structure or specialized programming for saving an embedded signature to provide a patentable "inventive concept." *Affinity Labs*, 838 F.3d at 1265 (affirming dismissal, explaining "claims that are 'so result-focused, so functional, as to effectively cover any solution to an identified program' are frequently held ineligible under section 101.") (citation omitted).

To the extent that "saving an embedded signature" relates to using the "signature capture device" recited in Claim 1(f) and Claim 12(f) or the "signature capture module" recited in Claim 12(g), that too does not provide an inventive concept sufficient to confer patentability. First, with regard to the "signature capture device," it is undisputed that the specification fails to identify any specific device, let alone a device that is non-conventional. In fact, during oral argument, the District Court asked Appellant whether the '527 patent discloses how to get a signature in an electronic document. Appx120–121, 6:24-7:4. Appellant responded that the patent discloses "a signature-capture device," but acknowledged that "there's no – a specified device within the patent itself." Appx121, 7:5-11. And to be sure, the specification confirms that "signature capture device" "can be any type of electronic signature capture device capable of communicating with a computer." Appx33, 6:27-31.

Second, regarding the "signature capture module" limitation recited in Claim 12(g), the specification does not disclose any specialized structure, programming, or technique, nor does it specifically describe it in the context of saving a signature in a secure electronic document. Instead, the specification refers to the signature capture module at a high level and in purely functional terms. *Id.*, 5:29-32 (module enables a signing individual to embed their signature).

In sum, as to any allegedly inventive feature Appellant has identified related to the representative independent claims, there is nothing in the '527 patent that discloses any specific programming, device, or technique describing *how* to achieve "saving an embedded signature," and instead merely recites functional, results-driven descriptions that fail to provide a patentable inventive concept. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept"); *Two-Way*, 874 F.3d at 1339 (affirming judgment on the pleadings, where claim "only uses generic functional language to achieve these purported solutions. 'Inquiry therefore must turn to any requirements for *how* the desired result is achieved.'") (citation omitted) (emphasis in original). As such, neither independent claim recites features sufficient to

30

transform the claimed abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 217.

### 3.    *The dependent claims lack an inventive concept*

As discussed, Appellant has waived any argument that the dependent claims disclose an inventive concept. But to the extent the Court considers them here, the features Appellant identifies from dependent claims 10, 18 and 19 also lack an inventive concept. In this regard, Appellant identifies two features that allegedly provide an inventive concept: (1) "facilitating remote signatures" from claims 18 and 19, and (2) "capturing a signature at the time a transaction occurs" from claim 10. AppellantBr., 17. However, Appellant fails to explain why or how these features purportedly provide an inventive concept under *Alice* step two. *Id*. That alone should end the inquiry in Appellee's favor. Nevertheless, the '527 patent confirms that neither feature provides an inventive concept to confer patentability to the abstract idea of the claims.

Regarding "facilitating remote signatures," neither the claims nor the specification disclose any specific device, technique, or programming. When the specification discusses remote signatures, it only discloses generic communication means. Appx33, 6:34–38 ("local area network, a wide area network, an internet connection, a wireless connection, a wired connection including a USB connection, a telephone connection, and a broadband connection."). Claim 19 recites these

same generic communication means. Appx36, 12:44–50. And claim 18 recites "remotely" only in functional terms. Appx36, 12:39–43 ("configured to remotely communicate"). Dependent claims that merely recite "remote" in functional terms or with generic components do not add an inventive concept to otherwise ineligible subject matter. *See, e.g., Univ. of Fla.*, 916 F.3d at 1369 (affirming dismissal, finding the claimed "converting" "at a location remote from the bedside machines" to lack an inventive concept given the claims employ generic computing components); *ChargePoint, Inc. v. SemaConnect, Inc*., 920 F.3d 759, 774 (Fed. Cir. 2019) (affirming dismissal, finding claims directed to "remotely" operated charge stations does not supply an inventive concept). In sum, claims 18 and 19 fail to provide an inventive concept.

With regard to "capturing a signature at the time a transaction occurs" recited in claim 10, neither the claims nor the specification offer any details on how to make this immediate capture happen. No device, no programming, and no technique is disclosed to make it happen. The '527 patent only recites functional language that capture of a signature may occur in real time, at the time of the signing. Appx34, 8:44–46, Appx36, 11:40–42. Such results-oriented, functional language does not disclose an inventive concept under *Alice* step two. *See In re TLI Commc'ns*, 823 F.3d at 615 (dependent claims with additional "vague,

32

functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention.").

### C.    No Unresolved Issues of Facts Preclude Affirming Judgment

Appellant wrongly asserts a factual dispute exists based on three alleged improvements over the prior art set forth in the specification: (i) "digital equivalents to the written signature," (ii) "embedding a written signature into a secure electronic document," and (iii) "different types of signature tags, such as full signatures, initials, and notary."  AppellantBr., 14–15.  Appellant's assertions concerning "unresolved factual allegations" fail for several reasons.

First, "[s]atisfying the requirements of novelty and non-obviousness [by arguing improvements over the prior art,] does not imply eligibility under § 101, including under the second step of the Alice inquiry, because what may be novel and non-obvious may still be abstract."  *See Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904 (Fed. Cir. 2020).

Second, Appellant points to three "factual allegations *in the patent specification*" to assert issues of unresolved facts.  AppellantBr., 16 (emphasis added).  But, the claim limitations, not specification statements, dictate whether any unresolved issues of facts are present.  In *Berkheimer v. HP*, a specific claimed feature or set of claimed features must be in dispute as to whether or not those features are "well-understood, routine, and conventional."  881 F.3d 1360, 1368

(Fed. Cir. 2018). Appellant does not tie the statements in the specification to any specific claim limitation(s) and does not otherwise identify any particular claim limitation or set of limitations in dispute as containing unresolved facts on whether the limitation(s) is "well-understood, routine, and conventional." AppellantBr., 14–16. Appellant's reliance on *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) is also distinguishable. *Id.*, 15. In that case, a factual issue existed as to a specific whether an identified claim limitation was non-conventional, whereas here, Appellant fails to identify any particular claim limitation to make its contention. *Id.* at 1129 (asserting the claimed "data file" contains an inventive concept of improved importation of data for viewing and improved interoperability with third-party software).[6]

Third, none of Appellant's three allegations identify any specific component or programming for improving digital signatures. AppellantBr., 15. Appellant does not (and cannot) allege that the claimed invention uses anything other than generic computer components. Accordingly, no pertinent factual dispute exists to preclude judgment on the pleadings. *See Shopperschoice.com*, 958 F.3d at 1183 (affirming judgment on the pleadings, where claim is directed to commercial practice while using generic computer components); *Univ. of Fla.*, 916 F.3d at

---

[6] Appellant also cites *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180-81 (Fed. Cir. 2007), but that case was a breach of contract matter involving ambiguous terms in an insurance policy.

1369 (affirming dismissal, finding claims "'implement the abstract idea . . . on a generic computer.'") (citing *Alice*, 572 U.S. at 225); *In re TLI Commc'ns*, 823 F.3d at 612 (affirming dismissal, finding claims directed to generic computer technology).

Fourth, each of the three alleged improvements over the prior art describes nothing more than the long-standing practice of signing documents in an electronic context. As discussed, the '527 patent specification confirms that signing documents is and has been a long-standing real-world practice. Appx31, 1:7–8, Appx35, 10:28–35, Appx36, 11:2–3. And the specification itself can establish undisputed facts at the pleadings stage, which it does here, showing that the claims are merely directed to moving that long-standing practice to an electronic environment. *Id.*; *see also In re TLI Commc'ns*, 823 F.3d at 613–14 (affirming dismissal and rejecting patentee's argument that fact-finding is necessary because "here we need to only look to the specification" describing the claimed functions as "known"); *Symantec*, 838 F.3d at 1317–18 (specification establishes that claims directed to long-standing practice of screening messages like a "'post office' – albeit an electronic one."); *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) (affirming motion to dismiss, finding § 101 invalidity in light of intrinsic record showing the claiming of "century-old practice").

Fifth, Appellant's three alleged improvements simply refer to the abstract idea itself. In summarizing its three allegations, Appellant argues that the "concept" to "digitally sign a secure electronic document" "was not conventional or well-known." AppellantBr., 15. But, the abstract idea in *Alice* step one cannot provide the "inventive concept" in step two, making dismissal at the pleading stage ripe. *ChargePoint*, 920 F.3d at 774 (affirming dismissal, explaining "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept") (citation omitted).

Finally, Appellant incorrectly argues that the District Court erred by not responding to its three alleged improvements over the prior art. AppellantBr., 15–16. Appellant failed to even present two of the three allegations during the District Court proceedings. Appx94–95, 13:12–14:4 (identifying only the factual allegation at column 1, lines 22–39 of the specification, corresponding to the first of its three factual allegations in its appeal brief). Thus, Appellant's second and third alleged improvements can be disregarded. *See Sanderling*, 65 F.4th at 705 (rejecting consideration of specific factual disputes, where patentee failed to identify to the district court such factual disputes). Regarding Appellant's first allegation (that the '527 patent recites novel "digital equivalents to the written signature"), the District Court assumed this to be factually true and still found that it represents the abstract idea itself. Appx10, 9:7–18. The District Court correctly

36

applied Federal Circuit law to conclude that even an allegedly novel abstract idea

can still be—as is the case here—a patent-ineligible abstract idea. *See Apple*, 1

F.4th at 1045 (Fed. Cir. 2021) ("Even if claim 1 recites novel subject matter, that

fact is insufficient by itself to confer eligibility.") (citations omitted).

### D.     The District Court Did Not Need to Engage in Claim Construction

Appellant argues that the District Court erred in dismissing the case without

conducting claim construction.  AppellantBr., 17.  This Court, however, has

"repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim

construction or significant discovery has commenced." *Cleveland Clinic Found. v.*

*True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting

cases); *Content Extraction*, 776 F.3d at 1349 (affirming invalidity at pleading

stage, and stating "claim construction is not an inviolable prerequisite to a validity

determination under § 101.") (citations omitted).  During its briefing at the District

Court opposing the Section 101 motion, Appellant never asserted claim

construction was necessary.  In fact, during claim construction proceedings at the

District Court, Appellant *affirmatively* stated that no claim construction would be

necessary in this case.  Appx132 ("Plaintiff Esignature does not have any proposed

terms to construe and is going with 'no construction needed, plain and ordinary

meaning' for any terms that Adobe may designate.").

On appeal, Appellant identifies, for the first time, five claim terms for construction. AppellantBr., 16. But, Appellant still does not offer any proposed claim constructions, let alone an argument on how claim construction could affect the Section 101 analysis. *Id*. Appellant's failure to provide any proposed construction at the District Court or on appeal makes it appropriate to determine patent eligibility without claim construction. *Cleveland Clinic*, 859 F.3d at 1360 ("In any event, Cleveland Clinic provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis. Accordingly, it was appropriate for the district court to determine that the [asserted] patents were ineligible under § 101 at the motion to dismiss stage."); *Sanderling*, 65 F.4th at 704 ("Sanderling failed to provide proposed constructions," let alone explain how such "constructions would make any difference to the *Alice* analysis. Thus, the district court did not err by resolving the motion to dismiss without first undertaking claim construction.").

Further, nothing in the intrinsic record suggests that claim construction would impact the § 101 analysis. The specification describes each of the five claim terms Appellant now identifies in functional terms and recites nothing beyond generic structures or known software. Specifically, the specification describes the "editing module" functionally as "configured to edit content in an electronic document." Appx32, 3:8–9. And the only structure the specification

38

references is known software, "such as Microsoft Word, WordPerfect, OpenOffice, Google Docs, and the like." Appx32, 3:8–17. This is insufficient for finding an inventive concept. *See Symantec*, 838 F.3d at 1318 (specification shows no inventive concept given its disclosure of using conventional operating systems, such as Microsoft Windows). For the "signer list module," the specification describes it as allowing a user to create a list by name of persons that can sign a document. Appx32, 3:21–23. No structure is disclosed, other than the module "can be included or coupled to the editing module." Appx32, 3:18–19. The specification describes the "tagging module" functionally as providing types of signature tags for placing in an electronic document, but discloses no programming for this function. Appx32, 4:7–18. For "secure document signer module," the specification describes its function as allowing a user to view the electronic document and to accept written signatures at the tag location. Appx33, 5:10–14. No structure is disclosed, other than an interface having a similar appearance to the editing module (Appx33, 5:14–17), where "a wide variety of different types of user interfaces are possible" (Appx34, 7:8–11). Finally, the specification describes the "signature capture module" in functional terms as enabling a signing individual to embed their signature (Appx33, 5:29–32), but discloses no programming for embedding a signature (Appx33, 5:27–36). In sum, the '527 patent recites purely functional descriptions with no specific structures or programming describing how

39

to perform the function. *See Two-Way*, 874 F.3d at 1339 (affirming judgment on the pleadings and finding no inventive concept given functional descriptions and "no requirements for *how* the desired result is achieved") (emphasis in original).

In sum, the District Court did not err in granting judgment on the pleadings prior to claim construction.

## CONCLUSION

For the foregoing reasons, Adobe respectfully requests that this Court affirm the District Court's judgment on the pleadings and hold each of the claims of the '527 patent invalid under 35 U.S.C. § 101.

Dated: August 21, 2023                    Respectfully submitted,

                                          */s/ Michael A. Berta*
                                          Michael A. Berta
                                          Thomas T. Carmack
                                          ARNOLD & PORTER KAYE SCHOLER LLP
                                          Three Embarcadero Center, 7th Floor
                                          San Francisco, CA 94111
                                          Phone: (415) 471-3100
                                          Fax: (415) 471-3400
                                          michael.berta@arnoldporter.com
                                          tom.carmack@arnoldporter.com

                                          Nicholas H. Lee
                                          ARNOLD & PORTER KAYE SCHOLER LLP
                                          777 S. Figueroa Street, 44th Floor
                                          Los Angeles, CA 90017
                                          Phone: (213) 243-4000
                                          Fax: (213) 243-4199
                                          nicholas.lee@arnoldporter.com

                                          Nicholas Nyemah

40

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Phone: 202-942-5000
nicholas.nyemah@arnoldporter.com

*Attorneys for Appellee Adobe Inc.*

No. 23-1711

---

# United States Court of Appeals
# for the Federal Circuit

---

ESIGNATURE SOFTWARE, LLC

*Plaintiff-Appellant,*

v.

ADOBE INC.

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of California in Case No. 3:22-cv-05962-JSC,
Judge Jacqueline Scott Corley.

---

## CERTIFICATE OF COMPLIANCE

---

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B).  The brief contains 8684 words, excluding the

parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)

August 21, 2023                    */s/Michael A. Berta*
                                   Michael A. Berta

No. 23-1711

---

# United States Court of Appeals
# for the Federal Circuit

---

ESIGNATURE SOFTWARE, LLC

*Plaintiff-Appellant,*

v.

ADOBE INC.

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of California in Case No. 3:22-cv-05962-JSC,
Judge Jacqueline Scott Corley.

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that I filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system this twenty-first day of August, 2023, and that a copy was served on all counsel of record by the CM/ECF system.

August 21, 2023

*/s/Michael A. Berta*
Michael A. Berta